and is it Esposito or Esposito? Esposito, Judge, thank you. Okay, thank you. Go ahead. Actually in Italy, it's Esposito, but that's okay. So if I may proceed, Your Honor, thank you. Judge Scudder, good morning. Judge Ripple, good morning. First of all, I'm just going to start with a couple of basic principles, which is that a set of facts, all that is necessary is for us to allege a set of facts to put them on notice, and we don't have to necessarily specify every particular legal theory we might have. The fact that whether or not Panatera was off duty or on duty does also do not, and the city concedes this, necessarily preclude an employee acting under a state law being responsible for his or her conduct. The court noted that Didonato alleged that she was unconscious at times as a result of her head trauma. The court did accept that she could not easily leave Panatera's home or seek help. Yet the court held that it was her head injury that made her unable to leave or seek help. Not any affirmative act, show of force, or show of authority by Panatera. Defendants follow the law court in stating that the central issue or fact for purposes of Section 1983 is that she fell and hit her head, and that any 1983 responsibility stops there. Every action thereafter is her fault and not actionable, as they suggest. The parties... capacity as a paramedic. Yes. Especially in this case, to the extent... Well, it depends on the other circumstances. In this case, he found her in a semi-conscious state. She didn't step into the bathtub and shower herself. He picked her up and put her in the shower. She had blood everywhere, showered her off, took her out. So that could conceivably be or is the first act, washing her off. He then picked her up, took her out of the bathtub, put her on the floor, wrapped, wiped her off, put her head in a bandage. She attempted to crawl out, Judge, and then he picked her up and put her in a bed. Now, what I think is necessary for me to address is, he could have at that moment, at that very moment, called 911. She was semi-conscious. She had blood everywhere. She had a contusion. He could have called 911. He could have called his partner. We've alleged that he talked to his partner. He could have called anybody at his paramedic unit or at the fire department office. He could have taken her to the ER. He didn't do anything. Sorry for interrupting you, but I want to ask you this question in light of that line of argument. If a paramedic breaches what, for conversation purposes, let's just call a good Samaritan obligation, does that breach of the good Samaritan obligation indicate state action? Well, respectfully, Judge, I don't believe we're talking about a good Samaritan action. No, I know we're not. I know we're not. I know that. I know we're talking about the facts here. But my question is this. So suppose a paramedic in uniform, in uniform, is returning home from work, parks her car outside, crosses the sidewalk, walking toward her front door, and sees a neighbor in need of medical care and ignores the neighbor. Is that state action? I mean, I forget the other elements of proof. Is that state action? The case law suggests that that may not be state action, but what would be state action was once she then endeavors to assist that person, she can't just stop and she can't ignore other relief that might be required. And that's the case here. That's what we're arguing here. Once he endeavored to do anything for her, including putting her in his bed, let's say that putting her in his bed was a comforting moment for her. He then had a duty to call 911, Judge. Let's include the fact that rinsing her off, wrapping her head in a towel, and putting her in the bed are all part of a group of events intended to help her physically in her medical situation. The law says he can't stop there. He can't just leave her there for 15 hours during which other events occurred. As a paramedic or as a human being, though? Well, no, as a paramedic, Judge. As a human being, if I was walking down the street and saw somebody, we do have a good Samaritan law and it's a good thing we do. If I tried to help somebody and it didn't go right, but I'm not a trained paramedic. He was. He had been trained and would know what to observe about her. Consider, please, if he would, that he would know to do a concussion protocol. So doesn't that suggest that a paramedic on a Friday evening who gets drunk out of his mind and hits a bar patron right square in the face and that individual needs medical help, that the failure to obtain the medical help reflects state action? I think that goes back to whether or not he had the duty to act at that moment. Assuming that when he's at the bar... There's no question. I just slugged the guy in the face and he needs stitches. Right. But assuming that when he's at the bar, he's not on duty. He's just a guy at a bar. And why is he on duty? Well, no, no. What I wanted to answer was, if he as a paramedic engaged to then assist that person, yes, he would have a duty to do it properly and protect that person and provide additional aid and comfort and medical treatment. That's what happened here. He didn't. He didn't. Let's for sake of what we're talking about. He didn't sexually assault her and then she got injured in the bathroom. The sequence of events here is compelling as far as I'm concerned in that he had a duty. At the moment he found her in his bathroom, she hit her head. Again, as I say, if he had called 911 after he put her in the bed, maybe things would have been different. He certainly wouldn't have assaulted her, sexually assaulted her, but he did not do that. He engaged to treat her, whether it's a band-aid or a towel on the head. He took action. What's the source of law imposing that obligation? Is it the United States Constitution? Yes. What provision? Acting under color of state law and the case law that supports the requirement of somebody who is in that position where they undertake a duty, which he did, has a duty then to keep that person safe, number one. Number two, provide assistance and furthermore, not put them in a greater danger or danger or greater danger. Do you have in mind the cases of like the DeShaney line of cases? Is that what you're thinking? Yes, of course. The allegations in the complaint all seem to point to her injury as the source of her inability to exit the situation. How is that consistent with the claim that she was in his custody? By her own description, once she was injured, she was disoriented and mobilized. What affirmative actions did he take to restrict her freedom of movement? Several actions. Let's go backward to putting her in his bed. Let's assume that he put her in his bed to keep her safe and comforted while he called 911. At that point, that was a fair thing to do. But if it then turned into something else, which we think was his design, then that's not. He did nothing. He took no action. Judge, they were in a hot tub together. She got out of the hot tub. She had her underwear on. She went to the bathroom. She slipped and fell and hit her head. The court, the lower court, acknowledged that, quote, she could not easily leave Panatera's home or seek help. So the custody part of DeShaney, Judge Scudder and Judge Robner, is that custody also then includes the person not having an ability to otherwise seek help or escape. And in this case, the court found that she could not, based on the allegations, this is a motion to dismiss, based on the allegations, she could not easily leave Panatera's home or seek help. You see, the allegations, if we take them as true, all point to him taking these actions for his own benefit. I mean, horrible, but because he wanted to assault her, not because he was acting as a paramedic. Judge, what I indicated was, and what we argue is, that the head injury is not the 1983 case. The 1983 case is the accumulation of those three acts, washing her, putting her towel on her head, putting her hair in his bed, stopped there for a minute. Could he have called 911? Yes. Under the case law in 1983, at that moment, he knew she could not get out of bed. The judge found she could not escape. She could not seek help. Whether or not she could escape, she couldn't even seek help. At that moment, on call, he had a duty then to act, to do something more than what he did. Instead, what he did was made a decision to keep her in his bed and shortly thereafter, sexually assault her that night. She woke up while he was saying a terrible phrase about he couldn't come. Then she passed out. He kept her in his bed. If we look at each of them, at that moment, after he has sex with her, she then passes out again. Again, he's a trained paramedic. He should understand concussion protocol. He still does nothing. He had an opportunity at that moment to call his partner, 911, anybody, and say, I need help here, or put her in his car. Pick her up, put her in his car. I'm sure he's picked up many people as a paramedic. He doesn't. He then waits until the next morning and she's awakened by him being inserted in her and having sex with her at the time she was unconscious. He then again had an opportunity to do something. When she then again passed out, he did nothing. He then talked to his partner. He did nothing. So it's not just the single act, judges. Every act where he took liberties with her and engaged in horrific conduct, as we've alleged. And again, this is a motion to dismiss. It's not a motion for summary judgment. So at each step of the way, after he attempted to render her comfort and aid, it went the wrong way. And instead of continuing to do that, he sexually took advantage of her. Thank you very much, Mr. Esposito. Ms. O'Rourke, are you going to go first? Thank you, Judge. Thank you. Mr. Collins is going to go first. Oh, okay. Hello, Ms. Collins. Thank you. Hello, Your Honor, and may it please the court. Today, I'd like to emphasize one key reason why the district court correctly dismissed Ms. DiDonato's Section 1983 claim. And that is that Mr. Panitera did not act under color of state law. Such action involves an abuse of power that a person has only by virtue of his public employment. But here, Mr. Panitera did not invoke his authority as a city paramedic, let alone use that authority. Mr. Collins, I'm sorry to interrupt you. That's not very courteous in the first 30 seconds of your argument, but I've got a threshold question for you. You're a counsel for the city, correct? Yes, Your Honor. Through corp counsel. What are you all appealing from? Or what are you worried about on appeal? I couldn't figure out why you filed a brief. Sure, Your Honor. So a couple points. One, we're making clear that there is no well-pledged allegation against the city under Monell. Ms. DiDonato has completely failed to allege a city customer policy, so we wanted to point that out. Is that on appeal? Also, in the event that Ms. DiDonato's claim against Mr. Panitera did go forward, the city could potentially be in a position of indemnifying Mr. Panitera. So on that basis, we fully support the district court's decision to dismiss the claim against Mr. Panitera under Section 1983. So to the extent that... If an off-duty paramedic comes upon an accidency, commences treatment before the on-duty paramedics arrive, is that initial treatment provided under color of state law? If it isn't, why isn't it? I don't believe it would be, Your Honor, because the facts that you describe don't include some invocation of the off-duty paramedic's authority as a paramedic. So, for example, under those facts, the off-duty paramedic did not display a uniform or use the paramedic's official equipment, for example. So absent any kind of exercise or invocation of the paramedic's office, there would not be any action under color of state law. You know, Ms. DiDonato, sir, she was attempting to leave when Panitera picked her up, placed her on a bed, and then she was unable to exit. Why is that allegation not sufficient to demonstrate custody? If he took an affirmative action to block her exit or make it more difficult, why isn't that enough? Is there an open fact question about why she was unable to leave? We especially know, Your Honor, because our position is that because Mr. Panitera did not act under color of state law, then nothing he did in the course of that evening could have amounted to state custody for purposes of de shaming. So we submit that the court doesn't have to reach these questions to affirm the district court's judgment. Moreover, to the extent that Mr. Panitera's actions vaguely resemble assessing and treating injuries, which are among a paramedic's responsibilities, that's not enough to make his action under color of state law. So, for example, Ms. DiDonato alleges that after she fell in Mr. Panitera's bathroom, Mr. Panitera described her injury as bad. He wrapped her head in a towel and washed blood off of her body. But those acts do not involve an exercise of his authority as a paramedic because any person in that situation could have done exactly the same thing, whether they were a paramedic or not. So accordingly, Mr. Panitera did not act under color of state law. And the fact that Mr. Panitera acted entirely as a private citizen defeats any claim that Ms. DiDonato might assert under Section 1983, which requires action under color of state law. And it also means that for purposes of Dushani, the absence of state action means that she cannot show that she was in state custody or that she encountered a state-created danger. And so for these reasons, we ask that the judgment of the District Court be affirmed. Thank you. Ms. O'Rourke. Thank you, Your Honors. I represent Mr. Panitera in this matter. If it please the Court, even assuming for the sake of argument that Mr. Panitera was acting under the color of state law, and we believe the allegations do not support this in any way. He was a private actor. The government has no constitutional duty to provide medical services unless the situation falls under one of the two Dushani exceptions. And those exceptions are generally and narrowly interpreted. Plaintiff counsel said he's not considering the head injury under the 1983 allegation. But you can't separate the facts in that way. The facts are what they are. And the facts do not support that Ms. DiNinato was under the custody of Mr. Panitera at this time. Well, she alleges that she was attempting to crawl away from the scene when he picked her up and moved her to a bed where she was then unable to extricate herself. Why would that not be sufficient to demonstrate that she was in custody or that he moved her to a more dangerous situation than she otherwise would have been in? Because I think the facts as alleged and as Judge Kendall pointed out in this district court's memo that her injuries were actually restrained her. It was not an affirmative act of Mr. Panitera that restrained her. It was actually her physical injuries based on the fact she fell on the bathroom floor and was injured. That, as Judge Kendall noted, is really the heart of this matter. It was those injuries that she was not in custody but those injuries kept her from leaving the house and that she was unconscious at times, as she notes, because of those injuries that occurred. These facts alleged are not good facts in this case. We have to take them as true for purposes of this motion. A lot of these disdaining matters regarding these exceptions have facts that are unpleasant to say the least. But again, these disdaining exceptions are very narrow. Based on the custody exception and the facts alleged here, there are no facts that there was an affirmative act of Mr. Panitera that caused Ms. DiDonato to be in custody. Again, going to disdaining, these are to be narrowly, the U.S. Supreme Court has said these are to be very narrowly interpreted. To an incarcerated prisoner, someone voluntarily committed to a mental institution, a foster child or pre-child detainee. That is not the situation here. And so based on that fact, the facts alleged do not support that under the shaming exception Ms. Panitera was, sorry, Ms. DiDonato was in Mr. Panitera's custody. Ms. O'Rourke, I'm sorry. No, no, no, go ahead. My question is going to seem way off point, but it's this. The red brief that was filed in the case on the front cover of it talks about employees of the Corporate Law Department of State Farm Insurance. Is State Farm Insurance, they have anything to do with this case or what is going on with State Farm Insurance and this litigation? This action stems, was originally filed in state court as a premises liability matter. And Mr. Panitera is insured by State Farm for Homeowners Insurance. This was originally in state court before it was removed by the federal court. Okay, but State Farm Insurance, there's no employees from State Farm Insurance that are representing him for purposes of the federal court appeal. We represent him as counsel, Mr. Panitera in this matter. We are in-house counsel for State Farm. Okay, all right, all right. I think I got it. Thanks. Okay. Okay. Again, this case began as a premises liability matter in state court. I understand. And still is in state court for that purpose. Thank you. Okay. My time is short. I'm sorry, Your Honor.  He didn't call for medical assistance. Why should we not assume that he didn't call for assistance because he was providing it himself as a paramedic? Why isn't it reasonable to infer from the allegations that he assumed her care and his capacity as a trained paramedic? I see my time is up. Can I briefly respond? Okay, thank you, Your Honor. I think this goes back to what Mr. Collins is arguing. The facts alleged in this complaint come down to the question of are there allegations and facts of support that Mr. Panitera was acting as a paramedic? And the facts alleged in this case do not support that. The facts alleged indicate that he was acting as a private citizen. As Judge Kendall said in her decision on the district court, the most that could be really said here was that Mr. Panitera wrapped the plaintiff's head in a towel. That is it in terms of treating the plaintiff in this matter. That alone does not make this matter one that he was acting under a color of state law. He was acting as a private citizen in this matter. And Judge Kendall correctly ruled that there was no allegations of facts here that supported he was acting as a trained paramedic in this situation. Your Honors, we ask the court to confirm this court's dismissal of this matter. Thank you. Thank you. Mr. Esposito, you have some time for rebuttal. No, I was on mute. I'm sorry. Judge Scudder, just to complete the discussion about State Farm. So the case, the individual action, the state case was dismissed without prejudice. We've refiled it in state court and it's pending there and it will stay pending this hearing. Judge, you asked an important question. Why didn't, if he was providing assistance, he wouldn't necessarily have needed to call for any other assistance. What I'd like to point out is Ms. O'Rourke, as well as Mr. Collins, do exactly what the judge did, which is just to say this case is about a head injury. It's not. We're alleging that after she was put in her bed, she was restrained and not able to get out and assist herself during a moment when Panatera should have been taking care of her and getting immediate assistance if he could not provide it and it's alleged that in the end, she got sutures, had a concussion protocol, was found to have had a concussion. It's a very serious matter that occurred to her and if they were to suggest that Mr. Panatera didn't understand that, that would be a very frightening thing. The towel, the counsel, Ms. O'Rourke talks about the towel on the head and she ignores the washing off and the putting in the bed. So then my question is, and I'm not putting this to Ms. O'Rourke but Mr. Panatera, how then do they explain her being put in the bed if it's not to provide her comfort while he takes care of her and then gets her later assistance? Why is she in his bed? She was crawling out of the bathroom. He could have picked her up, sat her on the bed or had her stay on the floor, put clothes on her, draped her with something and taken her to the ER or called 911. So it's a very telling point and I thank you for allowing me the opportunity. Judge Romner, would you mind if I ask one more question? I would. The line drawing in this area of law is hard. Mr. Esposito, one question. Hold all the facts the same but I want you to just change one. Yes, sir. Okay. Everything is the same except this, that the defendant is a firefighter and not a paramedic. Does anything change? No. Okay. The defendant is a prosecutor. Does anything change? Yes, because his role is not to... Firefighters also rescue people and provide comfort and assistance to people if the paramedics are not there. A prosecutor, that is not the prosecutor's job. Okay. I understand your position. It is a paramedic in your view, a paramedic 24-7 forever until he's not employed? No. They are not 24-7 but there's an exception here. Off the top of my head, I can't tell you the decision it's in, it's in our brief, but you don't necessarily even have to be on duty if you move forward to exercise a duty that you've been trained to engage in, a job that you've been trained to do. A prosecutor's not trained to do what you were suggesting, Judge Scudder, but a paramedic who's off duty but then proceeds with all the experience they have at hand to engage in conduct to assist somebody, yes, then that duty kicks in and to not put them in greater danger and in this case rape her twice. I mean, it's... Is the State Court case the only other case that is out there? Yes, Judge. Well, thank you all very much. We're going to, of course, take the case under advisement.